# United States Bankruptcy Court

_____WESTERN_____ District of __SEATTLE_____

In re Day & Nite Plumbing & Heating, Inc.          Case No. _09-13972_____

          Debtor

## Small Business Case under Chapter 11

<u>SECOND  AMENDED</u>

## <u>DAY & NITE PLUMBING & HEARING, INC]'S DISCLOSURE STATEMENT, AND PLAN DATED MARCH 26, 2010</u>

## I .INTRODUCTION

This is the Plan and disclosure statement (the "Plan") in the small business chapter 11 case of Day & Nite Plumbing & Heating, Inc. (the "Debtor").  This Disclosure Statement and Plan contains information about the Debtor and describes the Plan (the "Plan") filed by Day & Nite Plumbing & Heating, Inc on February 15, 2010. ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

A.     **Purpose of This Document**

This Disclosure Statement describes:

● The Debtor and significant events during the bankruptcy case,

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Plan  1

- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

- Why [the Proponent] believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

Be sure to read the Plan contained below as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

## B.  Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

### 1.  *Time and Place of the Hearing to [Finally Approve This Disclosure Statement and] Confirm the Plan*

The hearing at which the Court will determine whether to [finally approve this Disclosure Statement and] confirm the Plan will take place on _____4/2/10 AT 9:30_____, to be separately noticed. .

### 2.  *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to [insert address]. See section IV.A. below for a discussion of voting eligibility requirements.

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Plan  2

Your ballot must be received by <u>7 days prior to the confirmation hearing</u> or it will not be counted.

   3.   *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon counsel for the debtor by 7 days prior to the hearing on confirmation..

   4.   *Identity of Person to Contact for More Information:  Larry B Feinstein, attorney for the debtor.* 500 Union Street, Ste. 500, Seattle, WA 98101

C.   **Disclaimer**

The Court has not approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.  The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan.  Objections to the adequacy of this Disclosure Statement may be filed until 7 days before the date of the hearing on the adequacy of the Statement.

II.   **BACKGROUND**

A.   **Description and History of the Debtor's Business**

The Debtor is a corporation. Since 1954, the Debtor has been in the business of service plumbing & heating in No. King & Snohomish County.  Bruce Davis Sr has been an Owner &

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Plan  3

President since January of 1986.   We do not do new construction; we do service, repair & retro-fit, of any size; from toilets & faucets & water heaters, to complete re-pipes, Hydronic systems, Roof Top HVAC systems & Boilers.   For over 15 years we have been averaging over 600 Clients a month, ½ Residential, ½ Commercial; and over 75% are repeat and referral Customers.


### B.    Insiders of the Debtor

Bruce Davis Sr, President – Training & Sales

Judy Davis, V. President – Office Manager & Special Projects

Bruce Davis Jr. Sec. – General Manager & Financial Officer


### C.    Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor  (collectively the "Managers") were

Bruce Davis Sr, President –  GM, transitioning to Training & Sales.

Dan Krpan – Sec./Treas., Financial Manager, Office manager – Mr. Krpan was bought out by Bruce & Judy Davis' in May of 2007, and he stayed on thru August of 2007, helping Bruce Jr. learn the books etc.  Dan has remained available for Consulting.

Melissa Haug-Stephenson - Start 09/13/04, end 04/08/08 -  Melissa was our bookkeeper that worked for Dan beginning September 2004, and Bruce Jr. replaced her with Kimberly.

Kimberly Miller – March 2008 – Current – Kimberly is our current Bookkeeper that replaced Melissa.

Bruce Davis Jr.  May 2007 – Current -  Bruce Jr. is our current General Manager & Financial Officer.  He came in from the field when we bought Dan out.  After Dan trained him & left in August of 2007.  Bruce Jr.'s Management has significantly cut overhead & improved operations & profits.

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Plan  4

Judy Davis – May 2008. Judy came in from managing a Dental Office for over 11 yrs to help us here.

The Managers of the Debtor during the Debtor's chapter 11 case have been: [List Managers of the Debtor during the Debtor's chapter 11 case.]

➢ Bruce Davis Sr, President – Training & Sales.

➢ Bruce Davis Jr. – General Manager, Financial Officer

➢ Judy Davis – Office Manager

➢ Kimberly Miller - Bookkeeper

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be:

➢ Bruce Davis Sr, President – Training & Sales.

➢ Bruce Davis Jr. – General Manager, Financial Officer

➢ Judy Davis – Office Manager

D.    **Events Leading to Chapter 11 Filing**

In the summer of 2006, Davis started talking to Krpan [partner of 20+ years] regarding the ending of the partnership in the business. It was a very tough time for both on a personal level.  It took a couple months to come to terms with that reality, and the buy-out was finally arranged by the following spring & the sale happened in May of 2007.

By now the recession in the market place had started in full swing, but we felt we could weather it if we could pull the Company together.  Krpan stayed on thru August showing Bruce Jr. the ropes with the A/R & A/P & the office staff & the dispatch program etc.  The Buy-out and the worst recession our country has seen since the Great Depression happening at the same time are essentially

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Plan  5

why we had to file. Up until this time, Day & Nite Plumbing & Htg, Inc. had never had a problem meeting it's debts or taxes.

Bruce Sr. had some serious health challenges leading up to this time.

✓ Last week of August 2008 he had whole Left Hip replaced.

✓ March 13, 2009, left ankle re-built.

✓ April 28, 2009, left hip replace –again.  First one failed completely.

All of these surgeries are major, and involve several months of recovery.  He was unavailable to help at the Company for at least a month after the surgeries, and not up to full speed for some time even after that.

It should be noted that while out recovering in Sept & Nov of 2008, the company was locked into several Yellow-page contracts that proved very costly and unnecessary. Bruce Jr. took over as G.M. & Financial office in August of 2006, and began to greatly improve our position financially, however due to the depth of the trend we were already in, and the power of the Recession & it's momentum reducing our Sales, we couldn't avoid filing. Some of his improvements are listed below.

E.    **Significant Events During the Bankruptcy Case**

The debtor continued to reduce overhead & expenses in every area, including…

➢ Historically, Day & Nite has paid for the Medical Benefits for the Employee & the family, and we reduced the Benefits to 50% on the Dependants.

➢ We stopped our matching amount on the 401k Program until further notice.

➢ We froze all wages.

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Plan  6

➢ We reduced both Staff and Field employees by 10 people. The warehouse has 1 not 2, and office staff is reduced by 3. Field staff is reduced by as much as workload allows & is evaluated every 2 weeks at the end of the pay-periods.

➢ The entire field Staff is now on 4 days a week; Mon – Sat, 8am to 6pm. This has enabled us to have longer Regular Time hrs & Regular Time all day Saturday & capture more business and service call Volume. The office is Staffed on Saturday by Bruce Sr; Salaried. This has been in effect since last spring.

➢ Contrary to reports from various Tax Agencies, we have paid all taxes, post filing.

➢ Our CPA has filed back several years due to the new Tax Laws that the Recession has initiated, and has found a little over $31,000. worth of Refunds we are due from previously paid taxes that have been or will be applied to our past due taxes.

➢ Bruce Jr. took over as Financial Officer when Dan left, which was August of 2006. He began to effect changes that resulted in significant improvements and savings immediately over the next 15 to 18 months, which totaled to ***over $140,000 savings*** in our Annual Fixed Overhead spending, and increased revenues due to proper pricing for parts, jobs and our Retail Menu Pricing Book. Bruce Jr.'s improvements include…

- All of the Financially related cut-backs, wage freezes etc mentioned above.

- Departmentalizing Day & Nite's Books, enabling to see what was profitable & what wasn't so we could move on it accordingly & quickly.

- Published new D&N Parts Price book, that had not been re-done since 2005. Many, many parts were hugely under priced.

- Edited & updated our Retail Menu Pricer & published it & got out to the Techs. Old Menu Pricer was in effect since 2002.

- Initiated new charges for things we do all the time we had never charged for, examples; $15 fuel charge, $30. Permit fee, $5.00 shipping fee.

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Plan 7

- Found many of our Vendor contracts had not been serviced well & cancelled or re-negotiated them. Examples;
  - ✓ General Liability Insurance for whole Company- increased coverage by 1-million dollars, had the deductible per occurrence canceled (so we are charged no deductible now on a claim) and reduced the Annual Premium by slightly over $40,000. (this yr an additional 10% reduction has been offered due to our good record).
  - ✓ Stopped letting a Scrap person take our copper for next to nothing. We take it in now & get about $600. every 6 weeks.
  - ✓ Switched main scrap vendor, who now pays us $500 per load, instead of 'simply not charging us' to pick up our HWT & scrap Furnaces & Boilers.
  - ✓ We stopped lots of the laundry we had picked up & done, & bought the Techs shirts & have the balance of the laundry done by local Cleaners. Saves us an average of $500 per month.
  - ✓ Transitioned from Yellow Page advertising to primarily Internet & Radio Advertising. This happened over many months of course, but the eventual savings is approximately $10,000 per month; $120,000. Annually.
  - ✓ Switched CC processor & initiated 'desk top deposits'. Savings with both moves.
  - ✓ Collected all Gas Credit Cards from all employees & negotiated a deal w/local gas station to pay cash every 2 weeks at a discounted rate. This not only saved money, it controlled un-authorized spending that we had no way of really controlling before, because this Shell Station will not allow fuel to be charged to a vehicle that does not have our Logo.
  - ✓ Due to the mess our checking account was in when Bruce Jr. took over, he switched our Accounts over to Wells Fargo Bank from US Bank. He negotiated a lower cost for us with them and better services, like the Desk Top Deposits.

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Plan 8

- ✓ Returned Nextel phones for Fleet, negotiated new phones at good rates w/Verizon. No charge for Texting, so we cancelled & returned all pagers too.
- ✓ Got out of several Leases after filing, saving money & matching our reduced need as business slowed.

- He instituted a policy of updating all 'In House' Pricing sheets every 6 months, once they were all updated. Including Menu Pricer, Parts Pricer, Hot Water Tank Sales sheet, Furnace Sales Sheet, etc.

- After filing Chapter 11, PSE dropped us from their preferred provider list. Bruce Jr. and Judy Davis set up meetings with them right away & got us re-instated, based on our reputation.

- Bruce Jr. automated our Payroll system by writing a program in excel & initiated it with Bookkeeping, reducing the Labor spent on Payroll & reducing the mistakes made on our very complicated Commission Payroll system.

- Describe any asset sales outside the ordinary course of business, debtor in possession financing, or cash collateral orders. None.

- Identify the professionals approved by the court. Larry B. Feinstein, attorney for the debtor; and accountants for the debtor. Accountants were retained. No other professionals were employed.

- Describe any adversary proceedings that have been filed or other significant litigation that has occurred (including contested claim disallowance proceedings), and any other significant legal or administrative proceedings that are pending or have been pending during the case in a forum other than the Court. None; other than a pending motion by the State of Washington, which is disputed.

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Plan 9

- Describe any steps taken to improve operations and profitability of the Debtor. See above.

F.     **Projected Recovery of Avoidable Transfers [Choose the option that applies]**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

G.     **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

H.     **Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed on the Schedules under Schedule B filed in these proceedings and is available for review on Pacer, ECF, or from counsel, if requested.

The Debtor's most recent financial statements [if any] issued before bankruptcy, each of which was filed with the Court and can be viewed on Pacer or a copy obtained from counsel for the debtor. 2009 Balance Sheet, and Profit and Loss Statements are attached.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case are filed with the court each month, and available for review on Pacer, ECF, or from counsel if requested.

........... **III.     THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A.     **What is the Purpose of the Plan of Reorganization?**

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B.    Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

### 1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The Reorganized Debtor shall be responsible for timely payment of quarterly fees incurred pursuant to 28 U.S.C. 1930(a)(6). After confirmation, the Reorganized Debtor shall file with the United States Trustee, a monthly financial report for each month or portion thereof, that the case remains open. The monthly financial report shall include a statement of disbursements made during the course of the month, whether or not pursuant to the Plan. The Reorganized Debtor shall also file the Chapter 11 Post-Confirmation Report as required by Local Rule 2015-1(c).

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Plan  11

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $8,000+/- | Paid in full within 60 days of the effective date of the Plan, or according to terms of obligation if later.  These are ordinary trade and business debts incurred post-filing that are not otherwise paid current (net 30 days) |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | 0 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court. | $5,000 estimated over and above interim fees already allowed to complete case | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan.  Funds are on hand in trust. |
| Clerk's Office Fees | | Paid in full on the effective date of the Plan |
| Other administrative expenses | 0 | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | $1,250 | Paid in full on the effective date of the Plan |
| TOTAL | .$14,250 | |

2. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Plan  12

§ 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan.  All taxes shall be paid in full, 100% of the allowed amount of their priority claim, with interest computed under IRC §6621, as of the effective date of the Plan, over a period of 48 month [60 months from the petition for relief.] Payments shall commence on the 10th day of the first full month following confirmation, and made on the 10th day of each month thereafter until paid in full.    Tax penalties are treated as a general unsecured claim, and not a priority claim.    Taxes are as follows:

| Creditor | Claim | Payment |
|---|---|---|
| Labor and Industries | $14,313.47 | $330.00 |
| Department of Revenue | $103,431.31 | $2,385.00 |
| SUTA | $4,328.16 | $100.00 |
| Internal Revenue Service: | $37,146.00 | $855.00 |

C.    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.    *Classes of Secured Claims*

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Plan  13

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

A. The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Creditor | Equipment/Lease | Monthly Paym't | End Date |
|---|---|---|---|
| Marlin Leasing | Security equipment | $209.75 | 4/29/2013 |
| Pinnacle Business | Chevy Truck #18 | $285.66 | 12/9/2013 |
| Puget Sound Leasing | Camera & Locating Equip. | $607.13 | 6/30/2013 |
| Puget Sound Leasing | Dodge Truck #24 | $1068.74 | 2/1/2114 |
| Bank of America | Dodge Truck #26 | $813.51 | 10/14/2013 |
| Enterprise | 4 Trucks (managed fleet) | $87.84 | n/a |

All leases will be assumed under the non-default contract terms. Payments are current and shall remain current until the end of the term of the lease. The debtor will make an election at the end of the term of the lease as to return of the item and/or pay the residual and keep the item.

B. Secured Claims of Wells Fargo Bank, N.A.

The secured claim of Wells Fargo shall be paid in accordance with its terms and is unimpaired. Wells Fargo Bank, National Association is hereby granted security interests and liens (collectively the "Replacement Liens") in and to the following (collectively the Postpetition Collateral"): (a) all proceeds from the disposition of all or any portion of the Prepetition Collateral, (b) all property of the Debtor, the Debtor's estate and the Reorganized

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Debtor of the same kind, type and nature as the Prepetition Collateral that is acquired after the petition date, and (c) all proceeds of the foregoing. The Replacement Liens are and shall be in addition to the prepetition liens evidenced by the Commercial Security Agreement. The Replacement Liens granted to Wells Fargo shall have the same priority position as existed in the prepetition collateral prior to the petition date and shall be valid and enforceable as of the petition date. Further, no other lien of any type or nature shall become prior to the Replacement Liens granted herein as to the Prepetition Collateral or Postpetition Collateral by the passage of time or the acquisition of property, tangible or intangible, by the Debtor after the petition date. The granting of such Replacement Liens shall be in addition to Wells Fargo's rights in the Prepetition Collateral, and nothing contained herein shall constitute a waiver of Wells Fargo's rights and priority in the Prepetition Collateral. The Replacement Liens granted hereby shall be valid, perfected and enforceable security interests and liens on the property of the Debtor, the Debtor's estate and the Reorganized Debtor without further filing or recording of any document or instrument or any other action. Notwithstanding the foregoing, the Debtor is authorized and directed to execute and deliver to Wells Fargo such financing statements, mortgages, instruments and other documents as Wells Fargo may deem necessary or desirable from time to time. To the extent necessary, the automatic stay in effect pursuant to 11 U.S.C. § 362 is hereby modified and lifted to permit the granting of the Replacement Liens as set forth herein

2.    *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

receive cash on the effective date of the Plan equal to the allowed amount of such claim.

However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

... none

3.    *Class[es] of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 3, which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 3 | [1122(b) Convenience Class] | Impaired | Creditors with total claims of less than $1,000 shall be paid an immediate dividend in the amount of 50% of their claim within 90 days of the confirmation of the plan. |
|   | General Unsecured Class 3 | Impaired | Under the attached Exhibit, the debtor projects net annual profits from |

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

operations of approximately $85,000 per year. The debtor needs to retain about $2000/mo. for operating contingencies, unanticipated expenses and costs. The Plan pledges $5,000 per month into the Plan, for a total payment into the plan of $420,000.00. After the payment of the Class 1 and Class 2 priority claims, the balance shall be paid prorata to this Class for a total time period of 84 months (7 years). It is estimated that this Class shall receive about $245,000, about a 40% estimated dividend.

4. *Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. The holders of stock in the corporation shall retain their stock interest in the company.

D. **Means of Implementing the Plan**

1. *Source of Payments*

Payments and distributions under the Plan will be funded by the following: Operations. See the last filed US Trustee monthly operating report, showing general average monthly income and expenses, and attached 2009 P & L showing the debtor's general ability to pay.

E. **Risk Factors**

The proposed Plan has the following risks: The Plan is based on the debtor's current operations for the last 4 months, many years in business, and the anticipation that the general economy shall recover. If the economy in fact fails to recover as projected from the last 4 months operations, then the company could fail in the future and not be able to fund the Plan.

F. **Executory Contracts and Unexpired Leases**

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

All executory contracts and unexpired leases will be rejected under the Plan, unless specifically assumed below. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

G.     **Tax Consequences of Plan**

Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.

The following are the anticipated tax consequences of the Plan: none.

IV. **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

A.     **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes ___3___ are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes __1, 2___ are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1.     *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

2.     *What Is an Impaired Claim or Impaired Equity Interest?*

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

*Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].*

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B. **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by §

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. The debtor is paying under this Plan equal or more than the liquidation value of the assets of the estate. Under the Debtor's sworn schedules, there are substantial equity in the debtor's equipment, vans, machinery, and supplies. However, the debtor has valued the assets as of its cost basis, but has not obtained an appraisal of the assets. It is the debtor's experience in the industry, that used plumbing equipment, supplies and machinery actually have little or no value in the marketplace, and could not be sold for an amount in excess of that owed to the priority tax claims. There are $189,800 of secured claims on said vans and vehicles as well

### D.    Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

the Debtor, unless such liquidation or reorganization is proposed in the Plan.  The debtor has been in business for over 20 years, and contends that the current operations reflect that the future operations of the debtor make the plan highly likely to suceed.

1.      *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

2.      *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information.  Those projections are listed in Exhibit G.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $6,500 to $7,000 per month, and with contingency hold-backs, will have the $5000 per month available to make plan payments.

V.      **EFFECT OF CONFIRMATION OF PLAN**

A.      **DISCHARGE OF DEBTOR**

If the Debtor is a corporation:

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Plan  23

Discharge.  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B).  After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

Obligations to the tax priority claims under Section 507(a)(8) shall not be discharged until paid in full under the terms of the Plan

### B.    Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### C.    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

Plan  24

decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

D.    Default

13. **Default**.  In the event of default, the creditor occasioning said default shall give the debtor 30 days notice of default and opportunity to cure. If said default is not cured within said period, the creditor shall be entitled to enforce the entitlement under this Plan in any court of competent jurisdiction. Further, the holder of an allowed claim pursuant to Section 507(a)(8) of the Bankruptcy Code shall be entitled to automatically resume collection activities against the Debtor, without first obtaining this court's approval, if the Debtor fails to cure any default in repayment under the confirmed plan within thirty (30) days of receiving written notice of default from such holder. Secured creditors whose loans are restructured under this Plan shall treat said loans as current and treat said obligations as an ongoing amortizing obligation. In the event of default to a secured creditor, the creditor occasioning said default shall give the debtor 30 days notice of default and opportunity to cure; if said default is not cured within said period, the creditor shall be entitled to relief from the stay under this Plan, and may enforce any state law foreclosure or collection rights that may exist in the security documents between the parties.

In the event of default, and failure to cure, as to priority tax claims under Section 507(a)(8), the taxing agency shall be allowed to proceed with the type of collection it normally would have employed in the absence of bankruptcy and that the administrative

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

collection powers and rights of the taxing agencies will be reinstated as they existed prior to

the filing of the bankruptcy petition, including, but not limited to the assessment of taxes, the

filing of a Notice of Tax Lien and the powers of levy, seizure, and sale under the applicable

law.

Dated this 26th day of March, 2010.

/s/ Larry B Feinstein

_____
Larry B Feinstein, WSBA #6074
Attorney for Debtor

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

**Exhibit A** – Liquidation Analysis


*Plan Proponent's Estimated Liquidation Value of Assets*

**Assets**

| | | |
|---|---|---|
| a. | Cash on hand | $42400 |
| b. | Accounts receivable | $30000 |
| c. | Inventory | $41250 |
| d. | Office furniture & equipment | $7100 |
| e. | Machinery & equipment | $8000 |
| f. | Automobiles | $30000 |
| g. | Building & Land | $0 |
| h. | Customer list | $ |
| i. | Investment property  (such as stocks, bonds or other financial assets) | $ |

| | |
|---|---|
| ***Total Assets at Liquidation Value*** | $158750 |

**Less:**
Secured creditors' recoveries $135000

**Less:**
Chapter 7 trustee fees and expenses $

**Less:**
Chapter 11 administrative expenses

**Less:** $5000
Priority claims, excluding administrative expense claims

**[Less:** $175,000
Debtor's claimed exemptions]

$0

(1) Balance for unsecured claims $0
$0

(2) Total dollar amount of unsecured claims

$650,000

***Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation*:** $0


***Percentage of Claims Which Unsecured Creditors Will receive under the Plan estimated*** _45%___

Vortman & Feinstein
500 Union Street, Suite 500
Seattle, WA 98101
206-223-9595
Fax: 206-386-5355

# Day & Nite Plumbing & Heating, Inc.
# Profit & Loss
### April 24 through December 31, 2009

| | Apr 24 - Dec 31, 09 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Bad Debt Expense | -6,488.60 |
| Cash Over | 111.40 |
| Cash Short | -348.34 |
| Customer Finance Charges | 112.38 |
| Miscellaneous Income | 659.59 |
| Promotional  Discounts | -92,389.06 |
| Revenue - Labor | 1,079,361.24 |
| Revenue - Materials | 969,240.74 |
| Revenue - Misc Charges | 21,472.26 |
| Revenue - Referrals | 1,904.34 |
| Revenue - Scrap Metal | 1,124.85 |
| Revenue - Service Calls | 201,164.47 |
| Revenue - Service Contracts | 8,863.01 |
| Revenue - Sub Cont Services | 63,965.40 |
| **Total Income** | 2,248,753.68 |
| **Cost of Goods Sold** | |
| Consulting | 322.00 |
| Dealer Fee - Financed Jobs | 2,736.73 |
| Equipment Rent Expense | 2,010.80 |
| Laundry Expense | 5,309.02 |
| Material & Supplies Purchases | 490,056.66 |
| Office Supplies - Field | 2,707.68 |
| Parking - Job Expense | 252.97 |
| Permit Expense | 13,582.29 |
| Rebates - Manufacturer | -1,024.98 |
| Rework Sub Contractors | 1,665.00 |
| Shipping Expense | 72.46 |
| Small Tools | 3,161.94 |
| Spiffs | 9,964.00 |
| Sub Contractor Expense | 47,521.56 |
| Wages - Field | 474,101.90 |
| Warranty Write Off | 7,828.22 |
| **Total COGS** | 1,060,268.25 |
| **Gross Profit** | 1,188,485.43 |
| **Expense** | |
| 401K Expense | 6,199.99 |
| Advertising - Customer Ref | 125.00 |
| Advertising - Disc Cards | 399.92 |
| Advertising - Homeshow | -1,456.03 |
| Advertising - Internet | 23,553.00 |
| Advertising - Market Partnr | 4,550.00 |
| Advertising - Print | 310.04 |
| Advertising - Rebate | -383.32 |
| Advertising - Signage | 0.00 |
| Advertising - Yellow Pages | 2,514.00 |
| Advertising Radio | 35,202.45 |
| Advertising Service | 11,205.55 |
| Answering Service Expense | 3,992.00 |
| B&O Expense | 11,205.28 |
| Bank Service Charges | 3,572.41 |
| Bank Supplies Expense | 1,277.39 |
| Blding Repair & Maintenance | 1,365.05 |
| Blding/Janitorial Supplies | 597.07 |
| BR Expense | 33,453.00 |
| CC Fees | 24,871.77 |
| CC Interest Expense | 416.29 |
| Cellular Expense | 8,425.06 |
| Coffee/Kitchen Supplies | 70.50 |
| Collection Expense | 227.52 |
| Computer Repair/Maint Exp | 5,852.57 |
| Computer Software Expense | 867.00 |

# Day & Nite Plumbing & Heating, Inc.
## Profit & Loss
### April 24 through December 31, 2009



|  | Apr 24 - Dec 31, 09 |
|---|---|
| Computer Supplies | 289.68 |
| Copy Expense | 4,687.49 |
| Customer Recognition Exp | 544.13 |
| Damage Claim | 2,708.76 |
| Donations & Contributions | 1,455.94 |
| Dues & Subscription Expense | 156.72 |
| Education - Field | 4,369.07 |
| Employee Bonus Exp-Non Prod | 4,034.15 |
| Employee Development Exp | 520.00 |
| Employee PTO Expense | 50,571.39 |
| Employee Recognition Exp | 158.42 |
| Equip Repair/Maintenance | 820.17 |
| Equipment Lease Expense | 10,936.81 |
| Executive Bonus Expense | 9,899.62 |
| Extended Warranty Expense | 2,613.41 |
| Federal Tax Expense | 78,228.45 |
| Finance Charges Exp-Vendor | 1,120.00 |
| GPS Expense | 1,152.26 |
| Health Ins Expense - Cobra | 930.94 |
| Insurance Expense | 45,363.33 |
| Internet Expense | 750.00 |
| L&I Tax Expense | 18,333.48 |
| Land Line Expense | 8,109.55 |
| License Expense - Business | 976.06 |
| Loan Interest Expense | 2,510.19 |
| Meal Expense | 155.73 |
| Meal Expense - Field | 36.18 |
| Meal Expense - Management | 221.94 |
| Meal Expense - Office | 53.70 |
| Medical Ins Expense-Office | 27,195.44 |
| Medical Ins Expense - Field | 37,537.53 |
| Meeting Expense | 774.61 |
| Membership Expense | 2,731.96 |
| Office Equipment Expense | 45.41 |
| Office Supplies - Office | 3,036.33 |
| Paging Expense | 209.56 |
| Parking | 4.00 |
| Postage Expense | 964.03 |
| Professional Fees | 3,582.80 |
| Property Tax | 902.70 |
| PSE Referral Fee Expense | 4,098.09 |
| Reconciliation Discrepancy | 0.04 |
| Rent | 56,000.00 |
| Repair & Maintenance-Tools | 261.50 |
| Salary Wages - Sales | 64,372.71 |
| Security Expense | 3,335.76 |
| Storage Expense | 2,359.80 |
| SUI Expense | 5,065.80 |
| Uniform Expense | 522.77 |
| Utility Expense | 5,088.84 |
| Vehicle Expense - Fuel | 43,598.95 |
| Vehicle Expense - Fuel Mng | 1,130.38 |
| Vehicle Expense - Lease | 12,016.19 |
| Vehicle Expense - Licensing | 1,344.00 |
| Vehicle Expense - Maintenance | 3,547.53 |
| Vehicle Expense - Mileage | 432.03 |
| Vehicle Expense - Rental | 567.18 |
| Vehicle Expense - Repair | 12,811.67 |
| Wages - Corporate Officers | 149,241.28 |
| Wages - Office | 204,410.60 |
| **Total Expense** | **1,077,310.57** |
| **Net Ordinary Income** | **111,174.86** |

# Day & Nite Plumbing & Heating, Inc.
## Profit & Loss
### December 2009

|  | Dec 09 |
| --- | ---: |
| **Ordinary Income/Expense** | |
| **Income** | |
| Bad Debt Expense | -1,316.51 |
| Cash Over | 4.68 |
| Cash Short | -19.74 |
| Customer Finance Charges | 27.93 |
| Promotional  Discounts | -9,936.53 |
| Revenue - Labor | 161,706.11 |
| Revenue - Materials | 117,867.73 |
| Revenue - Misc Charges | 2,234.50 |
| Revenue - Scrap Metal | 114.85 |
| Revenue - Service Calls | 44,518.42 |
| Revenue - Service Contracts | 1,889.48 |
| Revenue - Sub Cont Services | 2,231.25 |
| **Total Income** | 319,322.17 |
| **Cost of Goods Sold** | |
| Dealer Fee - Financed Jobs | 256.78 |
| Equipment Rent Expense | 151.05 |
| Laundry Expense | 659.23 |
| Material & Supplies Purchases | 48,325.28 |
| Office Supplies - Field | 228.95 |
| Permit Expense | 1,878.57 |
| Rebates - Manufacturer | -91.67 |
| Small Tools | 901.29 |
| Spiffs | 900.00 |
| Sub Contractor Expense | 3,914.95 |
| Wages - Field | 62,438.72 |
| Warranty Write Off | 248.55 |
| **Total COGS** | 119,811.70 |
| **Gross Profit** | 199,510.47 |
| **Expense** | |
| 1 - Advertising - Disc Cards | 49.99 |
| 1 - Advertising - Internet | 2,550.00 |
| 1 - Advertising - Market Partnr | 0.00 |
| 1 - Advertising - Print | 299.64 |
| 1 - Advertising Service | 1,653.00 |
| 1 - Internet Expense | 150.00 |
| 1 - PSE Referral Fee Expense | 797.21 |
| 2 - 401K Expense - Field | 0.00 |
| 2 - 401K Expense - Office | 0.00 |
| 2 - Education - Field | 1,216.57 |
| 2 - Employee Bonus Exp-Non Prod | 3,784.15 |
| 2 - Employee Development Exp | 118.00 |
| 2 - Employee PTO Expense | 6,014.49 |
| 2 - Executive Bonus Expense | 813.51 |
| 2 - Meal Expense | 81.72 |
| 2 - Salary Wages - Sales | 10,058.35 |
| 2 - Wages - Corporate Officers | 19,132.66 |
| 2 - Wages - Office | 34,158.68 |
| 3 - Equipment Lease Expense | 172.10 |
| 3 - Vehicle Expense - Lease | 1,780.46 |

# Day & Nite Plumbing & Heating, Inc.
## Profit & Loss
### December 2009

| | |
|---|---:|
| 4 - Bank Service Charges | 692.25 |
| 4 - CC Fees | 3,840.84 |
| 4 - Loan Interest Expense | 163.33 |
| 4 - Rent | 7,000.00 |
| 5 - Computer Supplies | 92.99 |
| 5 - Copy Expense | 737.52 |
| 5 - Office Supplies - Office | 351.33 |
| 5 - Postage Expense | 385.00 |
| 6 - Blding/Janitorial Supplies | 5.74 |
| 6 - Customer Recognition Exp | 194.13 |
| 6 - Dues & Subscription Expense | 39.18 |
| 6 - Meeting Expense | 283.75 |
| 6 - Membership Expense | 1,027.60 |
| 7 - Answering Service Expense | 499.00 |
| 7 - Computer Repair/Maint Exp | 850.00 |
| 7 - Security Expense | 323.26 |
| 7 - Storage Expense | 262.20 |
| 7 - Uniform Expense | -29.41 |
| 8 - Federal Tax Expense | 4,437.07 |
| 8 - Insurance Expense | 9,518.00 |
| 8 - License Expense - Business | 587.00 |
| 8 - Medical Ins Expense-Office | 2,133.88 |
| 8 - Medical Ins Expense - Field | 4,545.19 |
| 8 - Vehicle Expense - Insurance | 392.50 |
| 9 - Cellular Expense | 1,641.11 |
| 9 - Land Line Expense | 923.81 |
| 9 - Utility Expense | 1,080.10 |
| Damage Claim | 44.24 |
| V - Fuel Expense - Management | 301.94 |
| V - Vehicle Exp - Maintenance | 724.53 |
| V - Vehicle Expense-Licensing | 176.00 |
| V - Vehicle Expense - Fuel | 5,237.73 |
| V - Vehicle Expense - Mileage | 21.45 |
| V - Vehicle Expense - Repair | 4,282.22 |
| V - Vehicle Rental Expense | 16.15 |
| **Total Expense** | 135,612.16 |
| **Net Ordinary Income** | 63,898.31 |
| **Other Income/Expense** | |
| **Other Income** | |
| Interest Income | 0.54 |
| **Total Other Income** | 0.54 |
| **Net Other Income** | 0.54 |
| **Net Income** | **63,898.85** |

# Day & Nite Plumbing & Heating, Inc.
## Balance Sheet
### December 2009

|  | Dec 31, 09 |
|---|---:|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| Petty Cash Funds | 88.71 |
| US Savings Acct | 0.01 |
| WF Liability - B | 8,234.93 |
| WF Material - B | 2,570.62 |
| WF Operating-B | 76,295.80 |
| WF Referral Savings Acct-B | 0.05 |
| WF Savings Acct. - B | 20,839.67 |
| **Total Checking/Savings** | 108,029.79 |
| **Accounts Receivable** | |
| Accounts Receivable | 64,256.55 |
| **Total Accounts Receivable** | 64,256.55 |
| **Other Current Assets** | |
| Vendor Deposits | 1,062.00 |
| **Total Other Current Assets** | 1,062.00 |
| **Total Current Assets** | 173,348.34 |
| **Fixed Assets** | |
| Accumulated Depreciation | -464,175.85 |
| BDDK Enterprises | 116,157.07 |
| Furniture & Fixtures | 16,236.70 |
| Leasehold Improvements | 5,356.67 |
| Machinery & Equipment - HVAC | 1,266.34 |
| Machinery & Equipment - Office | 190,318.27 |
| Office Equipment | 930.72 |
| Transportation | 291,943.15 |
| **Total Fixed Assets** | 158,033.07 |
| **Other Assets** | |
| Accumulated Amorization | -30,000.00 |
| Covenant not to Compete | 200,000.00 |
| Inventory Plumbing/HVAC Supplie | 234,854.07 |
| **Total Other Assets** | 404,854.07 |
| **TOTAL ASSETS** | **736,235.48** |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| Accounts Payable | 21,630.78 |
| **Total Accounts Payable** | 21,630.78 |
| **Other Current Liabilities** | |
| Note Payable - BDJ | -219.34 |
| Note Payable - BDSR | 2,001.68 |
| Sales Tax Payable | 27,552.42 |
| SUI Tax Payable | 229.67 |
| Yoder Note Payable | 49,000.00 |
| **Total Other Current Liabilities** | 78,564.43 |
| **Total Current Liabilities** | 157,128.86 |

**Day & Nite Plumbing & Heating, Inc.**
**Balance Sheet**
**December 2009**

| | |
|---|---:|
| **Total Liabilities** | 157,128.86 |
| **Equity** | |
| Distributed Dividends | -126,123.96 |
| Opening Balance Equity | -149,504.54 |
| Retained Earnings | -660.05 |
| Net Income | 60,974.65 |
| **Total Equity** | -215,313.90 |
| **TOTAL LIABILITIES & EQUITY** | -58,185.04 |

| | 2010 | | 2011 | | 2012 | | 2013 | | 2014 | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Gross Revenue | Net Profit | Gross Revenue | Net Profit | Gross Revenue | Net Profit | Gross Revenue | Net Profit | Gross Revenue | Net Profit |
| Jan | $239,680 | $1,100 | $241,663 | $1,500 | $251,030 | $1,700 | $258,523 | $1,760 | $262,270 | $2,001 |
| Feb | $236,363 | $2,200 | $238,210 | $2,100 | $247,443 | $2,800 | $254,829 | $3,000 | $258,522 | $3,000 |
| March | $267,443 | $3,400 | $269,533 | $3,500 | $279,979 | $3,460 | $288,337 | $4,180 | $292,516 | $4,200 |
| April | $252,667 | $4,979 | $254,641 | $5,093 | $264,511 | $5,290 | $272,406 | $5,448 | $276,354 | $5,527 |
| May | $250,377 | $5,508 | $252,333 | $5,551 | $262,113 | $5,766 | $269,937 | $5,939 | $273,850 | $6,025 |
| June | $257,244 | $6,431 | $259,253 | $6,481 | $269,302 | $6,733 | $277,341 | $6,934 | $273,360 | $7,034 |
| July | $257,838 | $7,219 | $259,853 | $7,276 | $269,924 | $7,558 | $277,982 | $7,783 | $282,011 | $7,896 |
| August | $270,260 | $8,108 | $272,371 | $8,171 | $282,928 | $8,488 | $291,374 | $8,741 | $295,597 | $8,868 |
| September | $274,753 | $9,067 | $276,900 | $9,138 | $287,632 | $9,492 | $296,218 | $9,775 | $300,511 | $9,917 |
| October | $302,870 | $10,298 | $305,236 | $10,378 | $317,067 | $10,780 | $326,531 | $11,102 | $331,264 | $11,263 |
| November | $277,251 | $93,703 | $279,417 | $93,780 | $290,248 | $101,159 | $298,912 | $101,461 | $303,244 | $101,613 |
| December | $313,144 | $12,526 | $315,591 | $12,624 | $327,823 | $13,113 | $337,609 | $13,504 | $342,502 | $13,700 |

**Net Profit Per Year**    $80,539      $81,592      $85,339      $88,627      $90,044

**Net Profit Thru 2016**     $606,032

Note: Each month on the above projection is based on 23yrs of Averaging them, as to what % they average

As you can see from our projected Revenues, we think it will take a couple yrs for sales to pick back up ag

2% to 4% net profit, we hope & expect to make more, but historically have not. However, we did NOT have

do now. Please Note...The NATIONAL AVERAGE Net Profit for our type of Company; 2.5% Annually, and AL

know this!!!

Also... It should be noted that my Wells Fargo Banker has told me Verbally that he expects to be able to rec

out Note. It currently is $18,000. Per month, & he is saying he expects to land at about $10,500 by Summer.

| | 2015 | | 2016 |
| Gross Revenue | Net Profit | Gross Revenue | Net Profit |
|---|---|---|---|
| $269,763 | $2,100 | $269,763 | $2,600 |
| $265,909 | $3,100 | $265,909 | $3,150 |
| $300,873 | $4,310 | $300,873 | $4,325 |
| $284,250 | $5,685 | $284,250 | $5,685 |
| $281,674 | $6,197 | $281,674 | $6,197 |
| $289,399 | $7,235 | $289,399 | $7,235 |
| $290,068 | $5,122 | $290,068 | $5,122 |
| $304,042 | $9,121 | $304,042 | $9,121 |
| $309,098 | $10,200 | $309,098 | $10,200 |
| $340,728 | $11,585 | $340,728 | $11,585 |
| $311,908 | $10,916 | $311,908 | $10,916 |
| $352,288 | $14,092 | $352,288 | $14,092 |

$89,663

$90,228

d in their year's Revenue.

ain. Though we only show

the plans in place that we

.L the players in my Industry

luce our Monthly Payment on the Buy-